Chief Justice Robertson,
delivered the opinion of the court.
Some time prior to 1821, Henry Pope Helm and Samuel Smith, had exchanged lands. In 1821, they rescinded their contract of exchange; and on the 21st of June, 1821, in consideration of improvements which Smith had, in the mean time, made on Helm’s land, Helm covenanted to pay him, within ninety days, $1000, which might “be discharged in notes of the bank of the commonwealth."
On this covenant, Smith obtained a judgment against Helm, on the 14th of March, 1822, for $1028 50 cents, which was shortly afterwards replevied for two years by Helm, with Moses S. Davis, his surety.
*289 On tbe 92d of March, 1899, Helm made to Moses ■S. Davis a bill of sale of his personal property, and á conveyance of the tract of land which Smith had improved; and Davis executed to Helm his promissory notes for $5000, payable in five years. This contract was rescinded on the 6th of July, 1822; and the bill of sale and notes were thereupon cancelled. But as Davis had, in the mean time, become bound as Helm’s surety in the replevin bond to Smith, it was agreed that he might retain the legal title to the land as an id enmity, but should re-convey it to Helm, whenever the debi to Smith should be “discharged” by Helm; in consideration whereof, Davis executed to Helm a bond for the re-conveyance, whenever he should be requested, after being relieved irons liability as Helm’s surety. The deed was z-ecorded in due time; The bond never was recorded.
Afteri facias having been issued on the replevin bond, the sheriff at the instance of Davis, levied on the land which Helm had conveyed to Davis; and having thus 'given up the land to be sold, Davis, without the knowledge or assent of Helm, agreed that it might be sold for whatever it would bring, without being valued. It was accordingly advertised and sold; and although it is admitted to be worth about ffiOOO, Benjamin Tobin-, Who directed and superintended the sale as Smith’s attorney and counsellor, bought it for $150.
Davis and some of his friends determined, that the land should sell for as much as the amount of the execution; and therefore, a friend of Davis had bid $921 for it; Tobin bidding against him. The sale was forbidden publicly and repeatedly by H. P. Helm, who was present, and who exhibited a paper, purporting to be a bond from Davis to him, for a re-conveyance, and published that Davis held the title onljf as art indemnity for being his surety in the replevin bond. Davis '•denied that the paper was genuine, and several persons who examined it, expi’essed the opionion, that it was spurious. Helm however, persisted in claiming the equity according to the effect of the bond which he exhibited, and in forbidding the sale. The land was cried off at $921; but the bidder not having the money, and failing to make any satisfactory arrangement for the payment of it, the sheriff determined to sell the *290 land again. During the interval between the first and second sale, there was a good deal of conversation and negotiation for compromise between Tobin, and Davis and Helm and some of their friends. Davis, only ob ject seemed to be, that the land should exhonerate him; and Helm appeared to be not only opposed to the sale, but to any arrangement which might affect his right to the land. When the proposed arrangements failed, Tobin assured Davis, that Ire should not suffer if he (Tobin) should be the highest bidder for the land. This was interpreted by Davis and his counsellors, as a pledge that no advantage injurious to him, would be taken of the sale of the land, if Tobin should be the highest bidder. Consequently, neither Davis nor his friends bid for the land on the last sale. And therefore, Tobin bought it for $150. The sheriff levied on the land and sold it as the property of Davis; bat in his deed, he conveyed all the right of H. P. Helm as well as of Davis! The execution was credited with $150,
Having ascertained that Tobin meant to hold the land for the $150, and would not release him as surety for the balance still due on the execution, Davis made some arrangement with him as Smiths counsel, in consequence of which the execution was returned satisfied, and Davis obtained a receipt for the entire payment of it. He then filed a bill in chancery against Helm and others as his debtors, claiming a decree for the amount of the execution, to be made out of the choses in action, which Helm held on his co-defendants. Helm made his answer a cross bill against Davis, Tobin and Smith; in which, after alleging the foregoing facts in substance, and charging a fraudulent combination between Davis and Tobin, and full knowledge by Tobin of his right, he prayed for a decree against Smith for the difference between commonwealth’s paper and specie, when his covenant became due; and a decree againt Davis find Tobin for a re-conveyance to him of the legal title to the land; or if that could not be affected, a decree against Davis for the value of the laud.
Tobin denied the imputed fraud and combination. He denied that he had notice of Helm’s equity; and insisted that he was a bonci fide purchaser.
Davis, in his first answer, written by Tobin, denied any combination or fraud; and averred that the sale was fair, and that Tobin was entitled to [belaud; but *291 in a subsequent answer, drawn by some other counsel, he alleged most of the facts which have bean recited in the foregoing synopsis, and charged Tobin with fraudulently imposing on him, by misreading, or otherwise distorting the first answer; all which is positively denied by Tobin.
Sa]¿ of ian(J without valuation cannot ® . table owner, unless he as-to tlieh
Deed may ba valid inler T'ffe*, a.nd *0 creditors a¿g_puroha'
Smith virtually admitted the allegations of the bill, as to the covenant for the §1000; but denied that Helm had any equitable right to any decree against him.
Helm having paid to Davis the amount of the execution, Davis’ bill was dismissed; and the circuit court, on the final hearing, dismissed Helm’s cross bill against Smith; and on the cross bill against Davis and Tobin, decreed that, on the payment of §150 and the legal interest thereon, by Helm, Tobin and Davis should relinquish to him all their right to the land. From this decree Tobin appealed; and Helm prosecutes a writ of error to reverse the decree on the cross bill against Smith. The decree against Tobin will be first considered.
The statute of farads cannot apply to this case. The land was levied on and sold as the property of Davis. It was not pretended on the day of sale, that any inter-es t of Helm was to be sold. He opposed the sale, solely on the ground that the land belonged to him in equity, and that Davis had no right to sacrifice it, by suffering it to be sold without being previously valued, His right was however denied, and the land was sold in defiance of his claim. No interest which he held' could have been sold, without valuation, unless he, as well as Davis, had waived an assessment by commission ers.
There is no proof that the deed from Helm to Davis was fraudulent; and if it had been collusive and without any valid consideration, it was good between the parties to it; and therefore, Davis5 legal right was sold.
The equity resulting to Helm fromthe contract of the sixth of July, 1822, is not affected by any design to defraud creditors, which could be imputed to the conveyance in March, 1822. The contract of March was, in fact, rescinded; and Davis was permitted to retain the legal title only as security for indemnity as Helm’s surety in -the replevin bond to him.
*292 The contract of July, 1822 is not Impeached by any charge of fraud. The consideration for the bond then taken by Helm from Davis, is not disputed, and is certainly valuable and legal. And therefore, in the absence of actual fraud, which is attributed to the contract of July, the bond for a re-conveyance to Helm on condition, vested in him an equity, which, as the condition has been performed, will entitle him to the land, unless some inflexible rale of law, or clear principle of equity, has given to Tobin a paramount right, in consequence of his purchase of the title of Davis.
As the legal title was in Davis, if Tobin be a bona fide, purchaser for a valuable consideration without notice of Helm’s equity, he insists that the legal right which he has thus acquired, cannot be overreached by Helm’s prior, but dormant and inferior right.
An analysis of all the facts which can be called from the record, has resulted in the opinion, that Tobm should be considered as a purchaser with notice of Helm’s right, or with a knowledge of such facts, as should have awakened his vigilance, and must affect his conscience.
The depositions of líaycraft and of J, L. Helm, should be satisfactory on this subject. Haycraft was a subscribing witness to the bond from Davis to Helm; was at the sale; communicated freely and publicly, and (as he believed) to Tobin, and in his hearing what he knew. But there are many other corroborative circumstances, Davis, who was only Helm’s surety, was anxious that the land should be sold; he voluntarily gave it up to the sheriff to be sold, although he owned personal property more than sufficient to satisfy the ex-excution; he agreed that it might be sold for whatever it would command at auction for money in hand, when he had a right to prevent its sale, if he had chosen to do so, unless two thirds of its value had been bid. Helm, opposed the sale, insisting on and publishing his right. Davis urged the sale, and denied Helm’s right. Tobin bid without competition; he bought for $150, upwards of 1000 acres of land, admitted by him to be worth about $¡4000. Who could doubt from these facts alone, that Tobin knew or had strong reasons to believe, that the equitable right to the land was in Helm ?
Notice of outstanding equity, to the agent of execution credit- or, is notice to his principal; notice to a creditor, is as effectual in courts of equity, as to a purchaser.
The paper which Helm exhibited as a bond on Davis for the land, was considered to be, and was, spurious. It was not the genuine original. But this does not operate essentially on the force of the positive, and circumstantial evidence of Helm’s equity, which was exhibited to Tobin, before he became the purchaser.
There are yet, other more minute facts, conducing to fortify the proof of notice. But to present and -reason on every fact, would consume more time than the subject requires. We are content with the conclusion, that Tobin must be considered a purchaser with notice.
But as he was a purchaser under execution, Tobin insists that his title is not affected by any notice which he may have had of Helm’s equity, because, as he alleges, the execution creditor had no notice. Whatever may be the true doctrine on this point, is not material in this case. The creditor'had notice. Tobin was his agent and notice to the agent, is notice to his principal; Astor vs. Wells, IV Wheaton, 466.
There are intimations in some adjudged cases, which might incline to the opinion, that notice of an unrecorded deed does not affect the rights of tne creditors of the grantor.
X This doctrine is not however, maintained on principle or authority.
Whether the legislature intended that notice should apply to, and affect the purchasers and creditors equally, might be a puzzling question. It has been glanced at by this court, but never directly decided. We shall not now consider it.
A subsequent and a precedent creditor may not stand on precisely the same moral ground; but they occupy the same legal position in reference to this question. The expression in the statutes being “any creditor,” if notice do not apply to a precedent, it cannot legally apply to a subsequent creditor.
It is not necessary to decide, whether the notice applies to the creditor as well as purchaser, and has the same legal effect on him; for whatever may be the legal effect of the provisions of the acts concerning the recording of certain conveyances in equity, the conscience of the creditor as well as that of the purchaser must be affected by notice.
*294 The registry acts of England declare, that conveyances not recorded according to their requisitions, shall he void as to subsequent purchasers, or mortgagees. Nevertheless, the British courts, construing these statutes according to their spirit and object,have repeatedly decided, thatwhile they vestthe legal estate in the subsequent purchaser, whether he had notice or not, they have not changed the principle of equity which gives efficacy to notice.
“The intention of the acts was to secure subsequent purchasers, and mortgagees against prior secret conveyances, and fraudulent incumbrances; and therefore, where a person has notice of a prior conveyance, it is not a secret conveyance by which he can be prejudiced;” and consequently, he “is not a person whom the statutes meant to relieve;” Sugden on vendors, 471; Campbell vs. Mosely, Littell’s Sel. Ca. 361.
If a creditor, who takes a mortgage on the specific estate, will be affected in equity by notice of a bona fule conveyance, why should not a creditor without any mortgage, be equally or indeed more seriously affected by the like notice?'
If the registry acts of Kentucky had been silent as to notice, then, according to the numerous authorities referred toby Sugden, the legal estate would vest in thef purchaser with notice of a prior unregistered conveyance, but in equity he might be compelled to relinquish it to the prior vendee, if his claim to relief were not affected by fraud or reasonable suspicion of fraud. The only essential difference between the statutes of this state and England would then he, that the latter apply to purchasers and mortgagees, and declare that, as to them, certain precedent conveyances shall be void; and the former would apply to all creditors as well as purchasers, and declare only, that against them the title shall not pass. If therefore, in England notice should have effect in equity, a fortioriit should have at least as much effect here, if our statutes had, like those of England, omitted notice.
The case of Campbell vs. Moseby, Sel. Ca. 361, seems to be in point.
Then we conclude, that if creditors cannot be affected at law, by notice as subsequent purchasers may be, *295 novertheless, they may be asmuch affected by it in equity as such purchasers are in England. The only distinction therefore, between a creditor and a purchaser, would be, that the latter would have no right legal or equitable, while the right of the former would be legal only.
When notice, the only question for a court of equity is, who has the prior and better equity, purchaser will have neither legal nor equi-tabte right, creditor’s title will be purely legal.
Bonds for title to land not within, the . statutes regulating conveyances ; the holder of such prior equity cannot be ever reached by a creditor of vendor, nor by subsequent purchaser with notice.
It follows from the foregoing reasoning, that in cases like the present, the only question for the consideration of the chancellor, is, who has the prior and more imposing equity? In solving this question, all the circumstances which can bear upon it, and which must necessarily be, in some degree, peculiar to each case, must be considered. Considering this case this way, no doubt can remain, that the decree of the circuit court should be affirmed.
But there is another aspect of'the case, still more favorable to the decree. The statutes of 1785, and 1797, operate only on “conveyances.”
Davis made no “conveyance” to Helm. If the contract of July, 1822, between them should be construed as vesting in Helm, only an ordinary equity, such as that which results to a purchaser who holds a bond for a conveyance, then it is evident, that the case cannot be brought within the operation of the statutes regulating conveyances. Bonds are not required to be recorded; and therefore, neither a creditor nor purchaser with notice of such an equity can hold the estate against a clear precedent-equity; seethe case in Sel. Ca. 361.
It is only by considering Helm as mortgagor, and Davis as mortgagee, that the statutes of conveying can apply to this case. Wo have heretofore reasoned in this case, as if they stood in this relation. But it is our opinion, that they cannot be considered as mortgagor and mortgagee.
Davis, and not Helm, held the legal estate on the 4th of July, 1822, when he covenanted to convey the legal title to them, on condition. It does not appear, that Davis had acquired the title on trust or for his security'. He must therefore, be considered as holding the legal title as a purchaser, unconditionally. The verbal rescisión of their contract did not divest him of his legal title. In consequence of that rescisión he would have re-conveyed to Helm, but he had become responsible as surety for him. and therefore, retained the title, *296 and covenanted to re-convey it to him, whenever he should be exonerated from the debt, for which he was surety. In contemplation of law, this bond for a conveyance cannot be a mortgage.
Vendor holding legal title, isresponsible to his vendee, for any abuse of his trust.
No relief in chancery against a judgment for specie, where from the face of the contract the demand was [dr commonwealth’s paper, the de-fence was purely leghl.
*296 It was not a deed or other document which was required to he recorded, any more than a bond to convey, on the payment of money to Davis, would have been a deed or document of title, which should have been recorded. There is no evidence that the deed to Davis was a mortgage, originally; it could never, therefore, become a mortgage. Such contracts as that oi* July, 1822, are liable to be impeached for fraud, and are in danger of being prejudiced by the honest rights of bona fide creditors and purchasers. But if they can escape the denunciation of unfairness, and the superior claims of creditors or purchasers without notice, they must prevail and be protected.
There is another consideration which should not he pretermitled. This alone would,in our opinion, he decisive in favor of the decree, if there were no other ground for sustaining it. Davis held the legal title for Helm. He would, therefore, be responsible to Helm for abusing the trust reposed in him. He occasioned the sacrifice of the land; without the authority of Helm, and against his will. He acted unwarrantably, and we think fraudulently.
Tobin was enabled to buy the land at $150, by assuring Davis that he should not loose by it. If Davis were subjected to Helm for the injury which he occasioned to him, Tobin would he equally liable to Davis. Helm may take the place of Davis, in equity, because Davis, after July 1822, was his trustee. The evidence would authorize a decree for a restitution of the legal title to Davis, on the payment to Tobin of the price he hid for the land. If it would not, it could be only because Davis acted fraudulently. But this fraud cannot operate against Helm. Therefore, he is entitled to the legal tifie.
The decree in favor of Holm, is, therefore, affirmed*
The decree in favor of Smith and against Helm, must also he affirmed. Helm’s remedy was exclusively legal. His covenant was, in effect, a contract to pay commonwealth’s paper. Such would he the popular., and must be the legal interpretation of it. Smith had *297 jao right to a judgment for more than the value of ‡1000 in commonwealth’s notes, at the time the covenant became due. If the circuit court erred in allowing him snore, the error might have been corrected by an pa-peal to this court; but the clianceller cannot revise and correct it. ■ There was not, as has been urged by counsel, a concurrent legal qnd equitable remedy. If there had been, Helm might be entitled to relief in equity, although he attempted to defend at law. He did not defend at law; and it docs not appear that he took any step which would have enabled him to reverse the judgment, merely on the ground that he was not suffered to make his defence, it does not appear that he filed or offered to file any plea, which the court rejected or decided to be insufficient; or that any bill of exceptions was taken to any opinion of the court. If, therefore, be had ever had a right to ask relief in chancery, it would be unjust and unreasonable to withhold it from him, merely because be made an abortive attempt to defend the suit at law, but did not defend, nor do any thing which could entitle him to a reversal of the judgment, on tire ground that he was not allowed to make defence. But as his only defence was legal, he cannot be indulged in chancery.
I\f ot'error id decree ten per cent iñ gross, upon dissolution of injunction.
When the error presented in a record upon motion fot supesedeaa is amendable, the court will overrule the motion and suggest the amendment; but if called upon to do-cide the cause, upon hearing, thé court will reverse.
Nor will we reverse the decreé, for the alleged error of the circuit court, in decreeing ten per cent, damages in gross on the dissolution. The record exhibits the amount on which the per cent, is to be calculated; and, therefore, decreeing ten per cent, on that sum, is tantamount to decreeing the sum which the per cent, amounts to. The sum is simple and certain, and therefore, when it is stated, the aggregate of the damages is known.
But we cannot concur with the counsel, that if there were error in this part of the decree, the court should not regard it, because it may be corrected by the circuit court. Without determining whether or not such an error would be amendable, we are clear that if it were amendable, it would still be our duty to reverse and not affirm. By affirming, the error would be pla'ced beyond the power of the circuit judge. He could not then amend it, because nothing would be left to amend.
Where the only error in a record presented for a su-persedeas, may be such an one as the circuit court may *298 amend, this court would feel authorized to refuse the supersedeas, and suggest on the record, the fact that error might be amended by the circuit court. This has been our recent practice. But when the cause is heard, and we are called on to decide it, we must reverse, if there be error, whether the inferior court mighi, have corrected the error by amendment or not.
Tobin, for appellant; Mills and Brown, for Helm j Denny, for Smith and al.
As, however, there is no error in this decree, it is affirmed.